**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Ronald Westmoreland,** | ) | **CASE NO. 1:08 CV 2581** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Deborah Sutherland, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon the Motion for Summary Judgment of Defendant City of Bay Village (Doc. 37) and the Motion for Summary Judgment of Defendant Deborah L. Sutherland (Doc. 38). Also pending is Plaintiff's Motion for Summary Judgment (Doc. 40). This is a First Amendment case. For the reasons that follow, defendants' motions are GRANTED and plaintiff's motion is DENIED.

**FACTS**

Plaintiff, Ronald Westmoreland, filed this lawsuit against defendants, Deborah L. Sutherland and the City of Bay Village ("Bay Village" or "City"), alleging wrongdoing after

1

defendants disciplined plaintiff for making certain comments at a public meeting.

The facts of this case are largely undisputed. Nearly 18 years ago, plaintiff commenced employment as a firefighter for Bay Village. Plaintiff was a member of the Bay Village diving team and acted as the team's primary instructor. In addition, plaintiff owns a diving equipment business and sold diving equipment to Bay Village. Bay Village spent approximately $26,000 for diving equipment over an eight-year period. According to James A. Sammon, the Fire Chief of the Bay Village Fire Department, the dive team was used for search and recovery efforts. No individual has ever been rescued from drowning by the dive team.

At all relevant times, Deborah Sutherland was the Mayor of Bay Village.

In June of 2008, Bay Village decided to eliminate the diving team. The elimination was done for budgetary purposes.

On September 1, 2008, a 7-year old boy tragically drowned at Huntington Beach. Huntington Beach is located within Bay Village and is under the jurisdiction of the Metro Parks. The Bay Village Police Department received a 9-1-1 call reporting a possible drowning. Metro Parks Rangers were dispatched first, along with the Bay Village emergency response team. Westmoreland was part of the emergency response team. Eventually, additional emergency personnel arrived on the scene, including individuals employed by Rocky River, Avon Lake, Westlake, the U.S. Coast Guard, and the Ohio Department of Natural Resources. In addition, search boats, jet-skis, and a helicopter were part of the search effort.

Nearly an hour and a half after the 9-1-1 call was made, a Bay Village firefighter located the child. He was found in approximately three feet of water after rescue personnel employed the "human chain" approach. Although approximately 12 divers were on the scene, no divers

were used for diving purposes in the efforts.  Medical revival efforts were unsuccessful and the child died.

On September 15, 2008, plaintiff attended the Bay Village City Council meeting. Plaintiff identified himself as a 16-year member of the Bay Village Fire Department and a former trainer of the dive team.  He further indicated that he is an International Public Safety Diver Trainer and an expert in the area of public safety diving.  During the public address segment of the meeting, plaintiff made the following statements, in part,

- Now a seven year old kid is dead, that last year would have been found in about twenty minutes by the Bay Village Dive Team;
- ...this Council, this administration, is partly responsible for condemning that child to death;
- I knew I was watching a seven year old boy being condemned to death because we had no dive team. We could not go get this kid;
- The child was on the bottom.  Divers have [sic] to go and get him;
- You don't care.  That's why I am speaking today;
- The citizens need to know that their safety is jeopardized by the cuts in the manpower and the funding for the safety forces;
- ...what price did you put on a child's life?  How much did you save?  Did you save enough that it was worth letting a seven year old die?;
- A little boy had to die but you guys saved some money.

Defendant Sutherland concluded that the remarks made by plaintiff constituted "insubordination, malfeasance, misfeasance, dishonesty, failure of good behavior, and conduct

unbecoming of an officer of the Bay Village Fire Department." On October 9, 2008, defendants served plaintiff with a Notice of Disciplinary Action for his speech at the September 15, 2008 meeting. Plaintiff had previously been disciplined for conduct unrelated to the drowning incident. Bay Village employs a system of progressive discipline and, as a result of his previous discipline, he received a three tour unpaid suspension for his speech at the city council meeting. Plaintiff appealed his suspension. The appeal was denied and the grievance was ultimately submitted to arbitration. The arbitrator upheld the suspension.

Prior to the arbitration, plaintiff filed this lawsuit containing two claims for relief. In a previous order, this Court dismissed count two. Accordingly, the sole remaining claim in this case is count one, which is a claim asserted pursuant to 42 U.S.C. 1983 for violation of plaintiff's First Amendment rights. The parties cross-move for summary judgment and each opposes the other's motion.

### **STANDARD OF REVIEW**

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)). *See also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). A fact is material only if its resolution

will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden shifts to the nonmoving party:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 255).  *See also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).

Summary judgment is appropriate when a party who bears the burden of proof at trial fails to make a showing sufficient to establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  When the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  "The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 252).  Moreover, if the evidence is "merely colorable" or is not "significantly probative," the court may grant summary judgment.  *Anderson*, 477 U.S. at 249-50.

**ANALYSIS**

1.     Bay Village's motion

Bay Village moves for summary judgment on grounds that plaintiff's speech is not protected by the First Amendment.  Plaintiff moves for summary judgment on the grounds that the First Amendment protects the speech uttered by plaintiff and, therefore, Bay Village improperly disciplined plaintiff in violation of the Constitution.

"Not all speech by a public employee is protected by the First Amendment." *Banks v. Wolfe County Bd. of Edu.*, 330 F.3d 888, 892 (6th Cir. 2003).  "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."  *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

> Therefore, in determining whether a public employer has violated the First Amendment by firing an employee for engaging in speech, the Supreme Court has instructed courts to engage in a three-step inquiry.  First, a court must ascertain whether the relevant speech addressed a matter of public concern.  If the answer is yes, then the court must balance the interests of the public employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.  Finally, the court must determine whether the employee's speech was a substantial or motivating factor in the employer's decision to take the adverse employment action against the employee.

*Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003)(internal citations and quotations omitted).

With regard to the first step, employee statements are protected only if the public employee speaks "as a citizen," regarding a matter of "public concern."  *Fox v. Traverse City Area Public Schools Bd. of Edu.*, --- F.3d ----, 2010 WL 1948203 (6th Cir. May 17, 2010).  Thus, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes...."  *Garcetti*, 547 U.S. at 421.  An employee speaking out of personal interest purposes is not entitled to First Amendment protection.

*Rodgers*, 344 F.3d at 597.

As an initial matter, the Court rejects Bay Village's "argument," that plaintiff spoke at the city council meeting as an employee of Bay Village. In a footnote, Bay Village argues that, "[s]ince it is undisputed that plaintiff is not a Bay Village resident but rather a resident and citizen of Amherst, plaintiff was arguably speaking in his official capacity as an employee of the City of Bay Village, rather than expressing concerns to his fellow citizens." This is the extent of Bay Village's argument. Absent any factual analysis, the Court rejects the argument. As an initial matter, there is no indication that the speech was made pursuant to plaintiff's duties as a firefighter. Bay Village does not suggest that plaintiff was required to speak at the meeting as part of his employment. Moreover, the speech occurred at a public city council meeting; plaintiff did not express his views inside the workplace. These factors tend to support the conclusion that plaintiff made the statements as a private citizen. Bay Village fails to point to any case law holding that, because plaintiff did not live in Bay Village, the speech is unprotected. As such, to the extent Bay Village claims that plaintiff spoke as an employee, the argument is rejected.

Next, the Court must determine whether the speech at issue addressed a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). Generally speaking, public concerns include "any matter of political, social, or other concern to the community." *Id*. at 146. Speech is of a "public concern" if it "involves 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their

7

government.'" *Rodgers*, 344 F.3d at 596 (*quoting Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891 (6th Cir. 2001)).  Thus, "public concern" speech includes speech pointing out the failure of the government to discharge its duties or identifying actual or potential wrongdoing by the governmental entity.  *Id*.

> Additionally, in distinguishing between matters of public and private concern, we focus not on what might incidentally be conveyed by the fact that the employee spoke in a certain way, but the point of the speech in question.  Thus, controversial parts of speech advancing only private interests do not necessarily invoke First Amendment protection.  However, the employee's entire speech does not have to focus on matters of public concern, as long as some portion of the speech does.

*Id*. (citations and quotations omitted).

Bay Village argues that plaintiff's speech is not a matter of public concern.  According to Bay Village, plaintiff suffered personal financial loss as a result of the elimination of the diving team.  As such, his speech addressed a matter of personal concern.  In response, plaintiff argues that the drowning death of a child is a matter of public concern.

Upon review, the Court finds that, taken as a whole and in context, the subject matter of plaintiff's speech addressed a matter of public concern.  The thrust of plaintiff's speech is directed at the City's decision to cut funding for certain safety services and the outcomes resulting from those decisions.  Throughout his speech, plaintiff mentions not only the dive team, but cuts to training for safety personnel and difficulties resulting from the "shuffling of ambulances."  These are undoubtedly matters of public concern.  Bay Village appears to argue that, while plaintiff's speech does not explicitly refer to his personal interest in the dive team cuts, it is this personal interest that motivated the speech.  The motivation of the speech, however, does not alter its nature.  *See, Banks v. Woolfe Cty. Bd. Edu.*, 330 F.3d 888, 894 (6th Cir. 2003)(noting that employee's motivation in *Connick* did not render speech private where it

8

otherwise touched on a matter of public concern). *See also, Vaughn v. Lawrenceburg Power Syst.*, 269 F.3d 703, 716 (in determining whether speech addresses a matter of public concern, "we generally look to what was said, rather than why it was said"). This is in part because the public has a vested interest in hearing from informed employees on matters of public concern. *See, Garcetti*, 547 U.S. at 433 (noting that the public's interest in receiving information is as much at stake as the employee's right to disseminate it).

Bay Village argues that, even if the *subject matter* of plaintiff's speech involved a matter of public concern, the speech itself cannot be considered a matter of public concern because it is false.[1] According to Bay Village, the First Amendment does not protect knowingly false speech. Plaintiff responds that the speech is not false and, therefore, relates to a matter of public concern.

It is well-settled that false statements are not *per se* undeserving of protection. *See, Pickering v. Bd. of Edu.*, 391 U.S. 563 (1968). In *Pickering* the Supreme Court held that negligently made false statements may not serve as the basis for dismissal of a public employee where it is not shown that the statements impeded the employee's performance or interfered with the employer's operations. According to the Supreme Court, "absent proof of false statements knowingly or recklessly made," an employer must show some detrimental effect from the speech. *Id*. at 574. In essence, the Supreme Court concluded that negligently false statements are considered "matters of public concern," and that the false nature of the statements is a factor

---

[1] Although noting in passing that plaintiff gave an "opinion" at the city council meeting, plaintiff does not develop this argument in any fashion. In that plaintiff has not given defendant fair notice of this issue, the Court will not address it.

9

to be weighed in the "balancing" part of the three-step analysis. The Court expressly left open the question of whether an employer must show harmful effects where the employee made knowing or reckless false statements. *Id*. at n6.

Courts are split on whether intentionally or recklessly false statements are "matters of public concern." In *Johnson v. Multnomah County*, 48 F.3d 420 (9th Cir. 1995), the Ninth Circuit, after noting the split, held that recklessly false statements are not *per se* unprotected. The court reasoned,

> ...[C]onstitutional protection is afforded some false statements. In determining the level of protection to such statements, the Supreme Court has traditionally balanced the interest in creating a "breathing space" for speech against the competing governmental interests associated with preventing injurious false statements.... There is a real danger that stripping all First Amendment protection from recklessly false statements may inhibit the flow of accurate information from public employees who are uncertain about whether they have accumulated a legally sufficient factual basis for their statement. A more cautious approach is in order, an approach that considers the actual damage done to the government by the reckless statement, whether any one believed the statements, whether the government could easily rebut the false statements, etc. This is precisely the analysis undertaken in the *Pickering* balancing.

*Id*. at 424 (citations omitted). *See also, Moore v. City of Kilgore,* 877 F.2d 364 (5th Cir. 1989) (government must prove statements were recklessly or knowingly false before any weight is afforded to the government under *Pickering* balancing); *Brasslett v. Cota*, 761 F.2d 827 (1st Cir. 1985)(the conclusion that a statement was made with malice is one factor to consider in the *Pickering* balancing test)

On the other hand, the Tenth Circuit held,

Presumably, the issue of the truth or falsity of the statements at issue is relevant to both the threshold public concern analysis and the balancing required under *Pickering*. It is difficult to see how a maliciously or recklessly false statement could be viewed as addressing a matter of public concern. Nonetheless, a merely erroneous statement may be of public concern.

10

*Wulf v. City of Wichita*, 883 F.2d 842, n.24 (10 th Cir. 1989); *See also, Brenner v. Brown*, 36 F.3d 18 (7th Cir. 1994) ("an employee's speech is not protected where it is made with a reckless disregard for the truth").

In the context of qualified immunity, the Sixth Circuit has repeatedly indicated that qualified immunity is available for public officials who reasonably believe that an employee made intentionally or recklessly false statements. *See, e.g.*, *See also v. City of Elyria*, 502 F.3d 484, 492 (6th Cir. 2007); *Williams v. Kentucky*, 24 F.3d 1526 (6th Cir. 1994); *Gossman v. Allen*, 950 F.2d 338 (6th Cir. 1991). Qualified immunity cases, however, are not precisely on point. Since the Sixth Circuit has not directly addressed this issue, qualified immunity is available based on the fact that *Pickering* did not expressly afford protection to false statements intentionally or recklessly made. This Court notes, however, that certain language contained in *See* supports the conclusion that statements falling in this category are not considered "matters of public concern." In *See* the Sixth Circuit noted as follows,

> If the speech at issue is found to be a matter of public concern, this Court must then determine whether the plaintiff's First Amendment interests outweigh the defendant's interest[s].... In striking the balance, this Court has analyzed several factors including whether the speech: related to an issue of public interest and concern...; was false and the employer could not have easily rebutted or corrected the errors.... Therefore, although the truthfulness of the employee's statements is not relevant in determining whether the speech involves a matter of public concern *(unless, of course, the employee intentionally or recklessly made false statements)*, the truthfulness of such statements may be relevant–as one factor–in striking the appropriate balance between the employee's right to free speech and the employers' interest in efficient administration.

*See*, 502 F.3d at 493 (Emphasis added)("there is no evidence–and [defendant] does not assert–that [plaintiff's] statements to the FBI were, in fact, deliberately or recklessly false and, therefore, outside First Amendment protection").

Thus, the Sixth Circuit held that when false statements are made negligently, the

11

statements are nonetheless considered a matter of public concern.  The parenthetical contained in *See* strongly implies that where an employee intentionally or recklessly makes false statements, the speech is not a matter of public concern and, as such, the *Pickering* balancing test is inapplicable.

Thus, this Court must address defendant's arguments regarding the falsity of the speech in step one of the analysis, *i.e.*, ascertaining whether the speech involves a matter of public concern.  Upon review, the Court agrees with defendant and concludes that certain statements made by plaintiff during the city council meeting were false statements made with a reckless or intentional disregard for the truth.

Specifically, plaintiff stated "now a seven year old kid is dead, that last year would have been found in about twenty minutes by the Bay Village Dive Team."  In addition, plaintiff stated, "I knew I was watching a seven year old boy being condemned to death because we had no dive team. We could not go get this kid."  Plaintiff further indicated that, "the child was on the bottom.  Divers had to go and get him."

It is undisputed that plaintiff was present at the scene and aware of the details of the rescue effort.  In addition, it is undisputed that approximately 12 divers were present at the scene and that none of these divers were deployed for diving purposes because the child was located in three feet of water and the "human chain" approach was utilized.  Plaintiff does not refute any of these facts.  Thus, plaintiff, at a minimum, was reckless in attributing the death of the child to the lack of a dive team.  Plaintiff offers no evidence or argument as to how the existence of a Bay Village dive team would have had any impact whatsoever on saving the child's life.  Furthermore, defendant offers the affidavit of James Sammon, the Bay Village Fire Chief, who

12

worked as a firefighter for Bay Village for the past 34 years.  Sammon avers that the Bay Village dive team has *never* rescued an individual from drowning.  Sammon further avers that it took approximately 30 minutes from the time the 9-1-1 call was received until firefighters could establish control of the scene.  Therefore, it would not have been possible for divers to save the child within "twenty minutes."  Again, none of these facts are disputed by plaintiff.

Plaintiff argues that, contrary to defendant's assertions, the dive team is a search and rescue unit, not simply a recovery unit.  According to plaintiff, the primary vehicle used by the dive team contains the words "DIVE RESCUE TEAM."  In addition, the Standard Operating Guidelines for the dive team primarily focus on search and rescue.[2]  Plaintiff also notes that medical efforts were made to save the child's life.  Plaintiff offers this evidence to refute defendant's assertion that the dive team is used solely for recovery efforts.  Regardless, even if a question of fact exists as to the nature of the dive team, this does not alter the fact that in this particular case divers were available but not utilized.  Therefore, the existence of the dive team would not have saved the child's life.  Plaintiff offers no evidence suggesting otherwise.

Given that plaintiff was admittedly an experienced diver and long-time firefighter, who was present at the scene, he knew that no divers were deployed into the water and that the child was found in shallow water.  As such, his statement that "now a seven year old kid is dead, that last year would have been found in about twenty minutes by the Bay Village Dive Team" was made with a reckless, if not intentional, disregard for the truth.  The same holds true with regard to his statement that the boy was "condemned to death" because of the lack of a dive team.

---

[2]  Plaintiff also indicates that the police report from an earlier drowning "correctly characterized [the] efforts as rescue, not recovery."

13

Plaintiff also indicated that the boy was on the bottom and that "divers had to go in and get him." Like the first statement, both of these statements are recklessly or intentionally false. Plaintiff was at the scene and fails to offer any evidence indicating that he was unaware of the fact that divers were at the scene but not deployed in a diving capacity that day.

Having concluded that these false statements were made with a reckless or intentional disregard for the truth, the Court concludes that the statements are not "matters of public concern." Therefore, they are not entitled to First Amendment protection and defendant did not commit a constitutional violation by imposing discipline on plaintiff for making the statements.[3]

Because the Court concludes that the statements do not address a matter of public concern, an analysis of the *Pickering* balancing test is not required.

Even if the Court were to conclude, however, that false statements made with an intentional or reckless disregard for the truth are "matters of public concern," the Court finds that a balancing of the *Pickering* factors weighs in favor of defendant. Where statements involve a matter of public concern, the Sixth Circuit has held that courts should "consider whether an employee's comments meaningfully interfere with the performance of her duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Rodgers*, 344 F.3d at 587. In this case, plaintiff recklessly and intentionally made false statements at a city council meeting regarding the drowning death of a child. After

---

[3] Defendant identifies additional statements that they believe are not protected by the First Amendment. Having concluded that three of the statements are not matters of public concern, the Court need not address the additional statements.

14

presenting himself as an expert in public safety, he informed the public that the presence of a Bay Village dive team would have saved the child's life. As set forth above, however, plaintiff knew that this and other similar statements were untrue. To the extent intentionally or recklessly false speech is entitled to *any* First Amendment protection, this false speech undermines the City's legitimate goal maintaining public confidence in its safety workers. This legitimate goal is severely undermined when, as here, an employee represents himself as an expert in the area of public safety and proceeds to make intentional false statements to the public regarding the City's services. Any interest the public may have in receiving these recklessly or intentionally false statements, or any interest plaintiff may have in making the statements, is outweighed by the City's interests. Accordingly, even if recklessly or intentionally false speech is considered a "matter of public concern," the balancing factors weigh in favor of the City's right to discipline plaintiff for making the statements.

Having concluded that plaintiff's speech is not a matter of public concern and that the *Pickering* balancing test weighs in favor of defendant, the Court need not reach defendant's argument that the speech was not a substantial or motivating factor for the discipline.

2. Defendant Sutherland's motion

Defendant Sutherland moves for summary judgment on the grounds that she is entitled to qualified immunity. According to defendant Sutherland, a reasonable official in her position would have believed that her conduct did not violate a clearly established constitutional right. Plaintiff argues that qualified immunity is unavailable because defendant violated plaintiff's First Amendment rights. According to plaintiff, these are long-standing, well-established, rights.

"The doctrine of qualified immunity shields government officials from liability, as well

15

as from suit, so long as their official conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hardy v. Jefferson Community College*, 260 F.3d 671 (6th Cir. 2001) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Sixth Circuit has explained:

> The Supreme Court has instructed that a qualified immunity inquiry generally entails two discrete analytical steps.  As a threshold matter, we must ask whether the record, viewed most favorably to the plaintiff, establishes that '[the official's] conduct violated a constitutional right.' *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *see also Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). 'If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.' *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  'On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.' 533 U.S. at 201, 121 S.Ct. at 2156; *see also Burchett*, 310 F.3d at 942.

*Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir. 2003).

With regard to the question whether the right was clearly established, this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.  Further, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  *Id*. at 202.

Upon review, the Court finds that defendant Sutherland is entitled to summary judgment based on qualified immunity.  As set forth above, the Court concluded that the discipline imposed on plaintiff does not amount to a constitutional violation.

Moreover, even if a constitutional violation occurred, the right was not "clearly established."  The Sixth Circuit has repeatedly noted that *Pickering* has not been extended to

16

cover false speech made with an intentional or reckless disregard for the truth. *See, See v. City of Elyria,* 502 F.3d 484 (6th Cir. 2007); *Williams v. Kentucky,* 24 F.3d 1526 (6th Cir. 1994); *Gossman v. Allen*, 950 F.2d 338 (6 th Cir. 1991). Thus, as long as a public official "reasonably believes that an employee deliberately or recklessly made false statements," qualified immunity is available. *See*, 502 F.3d at 494-95.

In this case, the Court already determined that plaintiff made recklessly or intentionally false statements. For that reason, defendant Sutherland is entitled to qualified immunity. Alternatively, even if plaintiff did not actually make intentionally or recklessly false statements, it was reasonable for defendant Sutherland to conclude as such. Defendant Sutherland reasonably believed that plaintiff's statements that the presence of a Bay Village dive team would have saved the life of the child were false since the divers actually present at the scene did not enter the water for diving purposes. Moreover, plaintiff indicated that he was present at the scene. Therefore, it was reasonable for defendant Sutherland to conclude that plaintiff's speech was made with a reckless, if not intentional, disregard for the truth. Accordingly, defendant Sutherland is entitled to qualified immunity.

### **CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment of Defendant City of Bay Village (Doc. 37) and the Motion for Summary Judgment of Defendant Deborah L. Sutherland (Doc. 38) are GRANTED. Plaintiff's Motion for Summary Judgment (Doc. 40) is DENIED.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 6/11/10